**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DEBORAH STREETER et al.          *
                                 *
          v.                     *          Civil Action WMN-09-CV-01022
                                 *
SSOE SYSTEMS et al.        *

     *     *     *     *     *     *     *     *     *     *     *     *

**MEMORANDUM**

Before the Court are the following motions: Plaintiffs'
Motion for Remand, Paper No. 23, Defendants' Joint Motion for
Leave to File Amended Notice of Removal, Paper No. 34, Defendant
Engineered Crane Systems of America's Motion to Quash Purported
Service, Paper No. 20, and Nucor Defendants' Motion to Dismiss
or for More Definite Statement, Paper No. 21.  The motions are
fully briefed.  Upon review of the pleadings and the applicable
case law, the Court determines that no hearing is necessary
(Local Rule 105.6) and that the Motion for Remand will be
denied, the Motion to Amend will be granted, the Motion to Quash
will be denied as moot, and the Motion to Dismiss or in the
Alternative for a More Definite Statement will be denied as set
forth below.

**I.   BACKGROUND**

This action arises out of the death of Jimmy Wayne Streeter
on March 14, 2006.  Mr. Streeter died when the maintenance truck
in which he was sitting was struck by a 64-foot-long portion of

1

a calciner start-up stack that broke off of the roof of the W.R.
Grace FCC plant in Curtis Bay Maryland.  Plaintiffs allege that
the Defendants negligently designed, manufactured, and erected
the stack.

Plaintiffs filed their complaint against Defendants, SSOE
Systems, Inc. and SSOE, Inc. ("SSOE Defendants"); Warren
Environment, Inc.; Engineered Crane Systems of America ("ECSA");
Cianbro Corporation; Cianbro Equipment, LLC; Cianbro Fabrication
and Coating Corporation ("Cianbro Defendants"); Nucor
Corporation; Nucor Environmental Services, Inc.; Nucor
Properties, LLC; Nucor Building Systems Sales Corporation; and
Nucor-Yamato Steel Sales Corporation ("Nucor Defendants") in the
Circuit Court for Baltimore City, Maryland on March 13, 2009.
Streeter v. SSOE Systems, Inc. et al., Case No. 24-C-09-001879.
The Complaint alleged for all Defendants other than Cianbro
Corporation that Defendants were organized under the laws of
states other than Maryland and that their principal places of
business were states other than the State of Maryland. Compl.
¶8-18.  Plaintiffs alleged, however, that Cianbro Corporation,
while organized under the laws of a state other than Maryland,
had its principal place of business in Baltimore, Maryland.  Id.
at ¶9.  The Complaint asserts seven causes of action including
negligence, strict liability, and wrongful death.

Plaintiffs served Defendants with a summons and complaint on the following dates: SSOE Defendants on or about March 27, 2009; Cianbro Defendants on or about March 23, 2009; Warren Environment on or about March 26, 2009; Nucor Corporation on or about March 25, 2009; and the other Nucor Defendants on or about March 24, 2009.[1]  Plaintiffs initially filed an affidavit of service showing service on Defendant ECSA on March 27, 2009. Paper 20, Ex. A.  Subsequently, Defendant ECSA filed a motion to quash with this Court on May 18, 2009.  In response Plaintiffs withdrew their affidavit of service on ECSA.  Simultaneously, they sent to ECSA, pursuant to Fed. R. Civ. P 4(d), a notice of lawsuit and a request to waive service of a summons on June 4, 2009, by certified mail.  Plaintiffs' actions relating to service on ECSA thus render ECSA's Motion to Quash moot.

On April 22, 2009, Defendants Cianbro Corporation and Nucor Corporation filed a notice of removal. They alleged diversity of citizenship, 28 U.S.C.§ 1332, as grounds for removal.  Cianbro Corporation and Nucor Corporation explained in the Notice that Cianbro Corporation's principal place of business as stated in Plaintiff's Complaint was incorrectly identified as Maryland.

---

[1] Plaintiffs note in their Motion for Remand discrepancies in the dates of service for the Cianbro and Nucor defendants as listed on the Notice of Removal and the Joint Response to Standing Order Concerning Removal.  The dates used here reflect the dates of service as listed on the Joint Response to Standing Order Concerning Removal.  Paper No. 19.

Notice of Removal at ¶2-3.  Rather, they alleged that Cianbro
Corporation's principal place of business is Maine.  Id. at ¶3.
In support of their allegation, they attached to the Notice an
affidavit of Thomas E. Stone, Executive Vice President &
Corporate Secretary of Cianbro Corporation ("Stone Affidavit").
Id., Exh. B.  The Stone Affidavit affirmed various factors
relevant to establishing that Cianbro Corporation's principal
place of business is Maine.  Id.

　　According to the affidavit of Robert L. Ferguson, Jr.,
counsel for the Cianbro Defendants, he received the Stone
Affidavit from Cianbro Corporation on April 17, 2009.  Ferguson
Aff. at ¶3.  He provided it to the Nucor Defendants the same
day.  Id. at ¶ 4.  Mr. Ferguson also affirmed that he did not
provide the affidavit to any of the other Defendants until it
was served electronically as Exhibit B to the Notice of Removal
on April 23, 2009.  Id. at ¶ 5.

　　The Notice of Removal represented that all Defendants
consented to the removal.  Paper 1 at ¶9.  The Notice only named
specifically, however, Cianbro Corporation and Nucor Corporation
and only their attorneys signed it.

　　The ECSA and SSOE Defendants filed joinders in the notice
of removal on April 27, 2009 and Warren Environment filed its
joinder on April 28, 2009. Papers 12-14.  The Cianbro subsidiary
Defendants and the Nucor affiliate Defendants explicitly

expressed their intent to join in the Notice of Removal in the Joint Response to Standing Order Concerning Removal filed on May 7, 2009.  Paper No. 19, ¶5.

The day before filing the Notice of Removal, on April 21, 2009, the Cianbro Defendants filed an answer to Plaintiffs' Complaint in the Circuit Court for Baltimore City that was signed by their shared attorney.  Paper No. 4.  These same defendants also filed contemporaneously with the Notice of Removal on April 22, 2009 the Disclosure statement required by Fed. R. Civ. P. 7.1 and Local Rule 103.3 stating that Cianbro Equipment, LLC and Cianbro Fabrication and Coating Corporation are subsidiaries of Cianbro Corporation.  Paper No. at ¶1.  The Disclosure Statement was also signed by joint counsel for the Cianbro Defendants.

## II.  MOTION FOR REMAND

## A.   Legal Standard for Remand

The removal jurisdiction of the federal courts is "scrupulously confine[d]," Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941), and the burden of proving federal jurisdiction is borne by the party seeking to invoke it. Maryland Stadium Authority v. Ellerbe Becket, Inc., 407 F.3d 255, 260 (4th Cir. 2005) (citing Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)).  Moreover, the removal statute is to be strictly construed and if federal

jurisdiction is doubtful the case is to be remanded.  Id.  Such

a strict policy against removal and for remand protects the

sovereignty of state governments and state judicial power.

Shamrock, 313 U.S. at 108-09.

Pursuant to 28 U.S.C. § 1441(a), where original

jurisdiction in a district court exists, a defendant may remove

an action from state court to that district court.  The

procedures for removal are set forth in 28 U.S.C. § 1446 and

require the filing of a Notice of Removal "containing a short

and plain statement of the grounds of removal, together with a

copy of all process, pleadings, and orders served upon such

defendant or defendants in such action."

**B.   Discussion**

Plaintiffs raise two arguments in favor of remand.  First,

they argue that Defendants have not met their burden of showing

that diversity jurisdiction exists.  Second, they argue that,

although Cianbro Corporation and Nucor Corporation filed a

timely notice of removal, the additional defendants did not

timely join that notice.  Both arguments are without merit as

discussed below.

1. Diversity of Citizenship

a. Plaintiffs' Citizenship

Pursuant to 28 U.S.C. § 1332(a)(1), a United States

District Court possesses original subject matter jurisdiction if

"the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the matter "is between citizens of different states."  In Plaintiff's opening motion they argue that Defendants have not met their burden of proving diversity jurisdiction in the Notice of Removal because Defendants do not allege that Plaintiffs are <u>citizens</u> of Maryland, but, rather, allege that Defendants are <u>residents</u> of Maryland.  Moreover, they argue that such an error is not amenable to amendment because it is an "additional allegation of substance" rather than a mere technicality or minor error. Plaintiffs' reliance on <u>Johnson v. Nutrex Research, Inc.</u> in support of this contention in this case is misplaced, however. 429 F. Supp. 2d 723 (D. Md. 2006).

In <u>Johnson</u>, Judge Titus remanded a case where only the residency of the plaintiff had been alleged rather than the citizenship.  <u>Id.</u> at 725.  Judge Titus held that citizenship and residence are not interchangeable for purposes of establishing diversity jurisdiction.  <u>Id.</u>  Important to his decision to remand, however, was that the defendants conceded that they could not prove the plaintiff's citizenship.  <u>Id.</u> at 726.  Judge Titus emphasized this point the next day in <u>Molnar-Szilasi v. Sears Roebuck and Co.</u> when he allowed the defendant to amend its pleading to reflect the plaintiff's citizenship rather than her

residency finding that it was merely a technical defect amenable
to correction.  429 F. Supp. 2d 728, 730-31 (D. Md. 2006).

Judge Titus explained that removal was proper in Molnar-
Szilasi, but not in Johnson, because in Molnar Szilasi there
were no serious questions about the plaintiff's Maryland
citizenship. Id. at 731.  The Court noted that Molnar-Szilasi's
complaint stated: 1) she resided in Montgomery Village in
Montgomery County, Maryland; 2) her boyfriend purchased the
product at issue in the litigation in Montgomery County,
Maryland; and 3) Molnar-Szilasi was injured while operating the
product in Montgomery County, Maryland.  Id.  Judge Titus also
indicated that the defendants in Johnson "did not even attempt
to amend their removal petition to clearly articulate the
grounds for diversity jurisdiction, whereas [in Molnar-Szilasi
the defendant] filed a Motion to Amend its Notice of Removal to
cure any technical defects of its initial notice. Id.

As in Molnar-Szilasi, the Complaint here demonstrates that
Plaintiffs reside at 215 Cherry Hill Road, Street, Maryland, and
that the accident that resulted in the death of Plaintiffs'
decedent husband and father occurred at the W.R. Grace Curtis
Bay FCC Plant in Columbia, Maryland, where the decedent worked
"at all relevant times."  Compl. at ¶¶4, 5, 7.  The record
demonstrates that Plaintiffs are citizens of Maryland, the
Notice of Removal identifies diversity of citizenship as the

basis of removal, and Plaintiffs have filed a motion to amend to
address the technical deficiency of using the word "resident"
instead of "citizen."  Therefore following the reasoning of
Molnar-Szilasi, Defendants' Motion to Amend the Notice of
Removal will be granted.

b. Defendant Cianbro Corporation's Citizenship

Plaintiffs belatedly contend in their reply brief that they
"do not concede" that Cianbro Corporation's principal place of
business is in Maine.  Rather, they maintain that it is in
Maryland, which would defeat diversity jurisdiction.[2]

Corporate citizenship for diversity purposes under § 1332
is determined both by the State in which the corporation has
been incorporated and by the State where it has its principal
place of business. 28 U.S.C. § 1332(c)(1).  The Fourth Circuit
recognizes two tests to determine a corporation's principal
place of business: the "nerve center test" and the "place of
operations test."  Athena Automotive, Inc. v. DiGregorio, 166
F.3d 288, 290 (4th Cir. 1999) (citing Peterson v. Cooley, 142
F.3d 181, 184 (4th Cir. 1998)).

The "nerve center test" is used "when a corporation engages
primarily in the ownership and management of geographically

---

[2] Although the Court notes that diversity jurisdiction would only
be defeated by Cianbro Corporation's citizenship in Maryland if
Plaintiffs' citizenship is also in Maryland, which Plaintiffs
have also evidently not conceded.

diverse investment assets," id., such as a holding company or a passive investment vehicle.  Peterson v. Cooley, 142 F.3d 181, 184 (4th Cir. 1998).  The "nerve center test" establishes the corporation's principal place of business as that "place where the corporation's officers direct, control, and coordinate its activities.  Id.

The "place of operations test", on the other hand, applies when the corporation has "multiple centers of manufacturing, purchasing, or sales."  Id.  The "place of operations test" focuses on where "the bulk of corporate activity takes place." Id.  Relevant considerations under the "place of operations" test include the location(s) of the corporation's offices, personnel and tangible assets, the locus of its day-to-day operations, where the corporation considers its headquarters, and location(s) where meetings are held, taxes are paid, and corporate records are kept.  Trans/Air Manufacturing Corp. v. Merson, 524 F. Supp. 2d 718, 722 (D. Md. 2007) (internal citations omitted).

Here, Cianbro Corporation provides construction and construction management services.  It is neither a holding company nor a passive investment vehicle.  Thus, the appropriate test to apply is the "place of operations test," although in this case either test would lead to the same result.

Relying upon the Stone Affidavit, the principal place of business of Cianbro Corporation for diversity purposes is in Maine.  The Stone Affidavit indicates that the activities conducted on behalf of Cianbro Corporation in Maryland are controlled and directed by the corporate officers in Maine. Stone Aff. at ¶ 9.  The amount of tangible assets of Cianbro Corporation located in the state of Maine is more than 2.3 times the amount of tangible assets owned by Cianbro Corporation in the State of Maryland.  Id. at ¶ 11.  Likewise, the number of personnel who are employed by Cianbro Corporation in the State of Maine is more than 2.4 times the number of personnel who are employed by Cianbro in Maryland.  Id. at ¶ 12.  Corporate meetings are held in the State of Maine, and the corporate books and records are maintained in the State of Maine.  Id. at ¶ 7. Of the thirteen corporate officers of Cianbro Corporation, twelve are domiciled in the State of Maine including, but not limited to, the CEO, COO, CFO, president, treasurer, and corporate secretary.  Id. at ¶ 5.  Of the six members of the board of directors for Cianbro Corporation, four are domiciled in Maine, including the Chairman of the Board, and two are domiciled in Florida.  Id. at ¶ 6.  The principal place of business identified in the corporate charter for Cianbro Corporation is Pittsfield, Maine, id. at ¶ 4, and Cianbro Corporation uses the address of its corporate headquarters in

Maine in connection with its formal tax filings with the State
of Maryland.  Id. at ¶ 10.

Notwithstanding this evidence, Plaintiffs assert that
Cianbro Corporation's principal place of business is in
Baltimore, Maryland.  In support of their argument, Plaintiffs
presented various filings by Cianbro Corporation with the
Maryland Department of Assessments and Taxation ("SDAT") in
which Cianbro Corporation has stated that its principal office
is located in Baltimore, Maryland.  Pls. Reply to Opp'n to Mot.
to Remand, Exh. I-IX.  Without more, Plaintiffs' evidence is
unpersuasive and does no more than establish that Cianbro
Corporation has an office in Maryland – a fact that Cianbro
Corporation itself concedes in stating that it has more assets
and employees in Maine than in Maryland.  Maryland law provides
for foreign corporations to certify a principal office within
the state of Maryland, "which may be a business office of the
corporation."  Md. Code Ann., Corps. & Ass'ns § 7-205.  But
there is nothing within the law that would indicate that the
principal office in Maryland is the same as the Corporation's
principal place of business for diversity purposes.  Thus,
Defendants have sufficiently established that Defendant Cianbro
Corporation's principal place of business is in Maine.

Because the evidence establishes that Plaintiffs'
citizenship for purposes of diversity jurisdiction is Maryland

12

and that Defendant Cianbro Corporation's principal place of business is Maine, Defendants have met their burden of persuasion in establishing the factors of diversity jurisdiction.

    2. <u>Timely Notice of Removal and Joinder</u>

    Plaintiffs next argue that this case should be remanded because not all Defendants manifested their consent to removal in a timely manner. They argue first that the Cianbro subsidiary Defendants and Nucor affiliate Defendants never formally consented to the removal of this action.  Plaintiffs next maintain that Warren Environment, Inc. did not file its notice of consent to removal until more than thirty days after it was served with the Complaint.  Finally, Plaintiffs contend that ECSA has not established that its consent to remove this matter was timely since it is unclear when it first "received" the Complaint.

    Procedurally, pursuant to 28 U.S.C. § 1446(b), a defendant must file "the notice of removal of a civil action . . . within thirty days after the defendant receives a copy of the initial pleading or within thirty days after the service of summons upon the defendant, whichever period is shorter." <u>Anne Arundel County, Md. v. United Pac. Ins. Co.</u>, 905 F. Supp. 277, 278 (D. Md. 1995).  Where there are multiple defendants served on different days, each defendant has thirty days from the date

s/he is served with process or with the complaint to join an
otherwise valid petition for removal to federal court. McKinney
v. Bd. Of Trustees of Maryland Com. Col., 955 F.2d 924, 928 (4th
Cir. 1992).  Defendants are not required to all sign the same
notice of removal under 28 U.S.C. § 1446, but they are required
to "'file a notice of removal, either independently or by
unambiguously joining in or consenting to another defendant's
notice, within the thirty-day period following service of
process.'" Anne Arundel County, 905 F. Supp. at 278 (quoting
Creekmore v. Food Lion, Inc., 797 F. Supp. 505, 508 (E.D. Va.
1992)).

Where the initial pleading is not removable, however, "a
notice of removal may be filed within thirty days after receipt
by the defendant, through service or otherwise, of a copy of an
amended pleading, motion, order, or other paper from which it
may first be ascertained that the case is one which is or has
become removable . . . ." 28 U.S.C. § 1446(b).  In examining
this statutory language, the Fourth Circuit concluded that,
where the grounds for removal do not appear on the face of the
initial pleading, be it due to obfuscation, omission, or
mistake, "the defendant will have 30 days from the revelation of
grounds for removal in an amended pleading, motion, order or
other paper to file its notice of removal." Lovern v. General
Motors Corp., 121 F.3d 160, 162 (4th Cir. 1997).  The court

14

noted that "the statute expressly encompasses the case in which the actual facts supporting federal jurisdiction remain unaltered from the initial pleading, but their existence has been manifested only by later papers, revealing the grounds for removal for the first time." Id. (emphasis in original).  The extension of the removal period should not apply, however, to "cover strategic delay interposed by a defendant in an effort to determine the state court's receptivity to his litigating position." Lovern, 121 F.3d at 163.

Here, Defendants contend, and this Court agrees, that the Complaint failed to reveal diversity jurisdiction on its face because it indicated that Cianbro Corporation's principal place of business was Maryland.  Thus, Defendants argue that while Cianbro Corporation itself knew that there were grounds for removal – and timely filed its notice of removal along with Nucor Corporation, the other defendants did not have notice of it until they received Mr. Stone's affidavit, which first revealed to them the grounds for removal.  Thus, under the Defendants' reasoning, the thirty day period for joining in the notice of removal did not start for the Defendants other than Cianbro Corporation until the day that they received the Stone Affidavit.

Plaintiffs, on the other hand, contend that Defendant Cianbro Corporation's knowledge as to its correct principal

place of business precludes it and the other Defendants from
tolling the removal period despite the Complaint not providing
grounds for removal on its face.  Plaintiffs cite to two cases
that indicated that where "the defendant is able to determine
from a fair reading of the complaint or other papers filed that
the [grounds for removal] exist[]," the defendant cannot "sit
idly by while the thirty day statutory period runs" solely
because the complaint does not set forth the grounds for
removal.  Keller v. Carr, 534 F. Supp. 100, 102-103 (W.D. Ark.
1981)(holding that where the complaint stated that the defendant
was a resident of Missouri or Arkansas and the defendant knew
that he was a citizen of Missouri, the defendant filing a motion
in state court to establish his citizenship as did not toll the
thirty-day removal period).  See also Nicholas v. Macneille, 492
F. Supp. 1046, 1047-8 (D.SC. 1980) (holding that an affidavit
prepared by the defendant containing facts solely within her
knowledge submitted to her own attorney did not serve to toll
the removal period where the complaint contained sufficient
jurisdictional allegations for the defendant to know at the time
of receipt that diversity of citizenship existed).  Both cases,
however, involved only one defendant with the requisite
knowledge and do not provide any guidance as to how to attribute
that knowledge to co-defendants.  Thus, Plaintiffs are correct
that the removal period for Defendant Cianbro Corporation

commenced from the time that it received the Complaint, but
Cianbro Corporation has not argued differently and timely filed
its motion.  The cases do not support, however, the idea that
Cianbro Corporations' knowledge can be attributed to its co-
Defendants nor does § 1446(b) create such a presumption.

Plaintiffs also argue that the Stone Affidavit does not
qualify as an "other paper" kicking off the thirty-day removal
period because it was not the product of a voluntary act of the
Plaintiff.  Plaintiffs' reading of the cases to which they cite
for this proposition is overly restrictive, however, and would
add an element to § 1446(b) that is not present.  In both cases,
it was not just voluntary acts of the plaintiff that could
result in an "other paper," but also "other acts or events not
the product of the removing defendant's activity."  <u>Potter v.
Carvel Stores of New York, Inc.</u>, 203 F. Supp. 462, 467 (D. Md.
1962). [3]  <u>See also</u> <u>Kurt Orban v. Universal Shipping Corp.</u>, 301 F.

---

[3] In <u>Potter</u>,the plaintiff filed an action in the federal district
court against the defendants alleging violations of federal
anti-trust laws.  203 F. Supp. at 463.  The defendants
subsequently filed a state court action against the defendant
for failure to pay rent.  <u>Id.</u> at 464.  The plaintiff filed a
motion to dismiss in the state court or in the alternative to
stay the proceedings pending the outcome of the plaintiff's
federal case.  <u>Id.</u>  Upon denial of his motion, the defendant
filed a petition for removal.  The Court in <u>Potter</u> found that
there had never been jurisdiction to remove the state court
proceedings based on the original pleading and it did not become
removable by an issue that "he interjected into the state
proceedings" by filing his motion to dismiss.  <u>Id.</u> at 467.  The
Court held that the "amended pleading, motion, order or other

Supp. 694, 699 (D. Md. 1969).[4]  These holdings are consistent

with the Fourth Circuit's holding in <u>Lovern</u>.  Moreover, the

Fourth Circuit has concluded that "[t]he 'motion, order or other

paper' requirement is broad enough to include any information

received by the defendant, 'whether communicated in a formal or

informal manner.'" <u>Yarnevic v. Brink's, Inc.</u>, 102 F.3d 753, 755

(4th Cir. 1996) (quoting <u>Broderick v. Dellasandro</u>, 859 F. Supp.

176, 178 (E.D. Pa. 1994)).

    Were this Court to follow Plaintiffs' argument that an

"other paper" could only be the result of a voluntary act of the

---

paper must emanate from either the voluntary act of the
plaintiff in the state court or <u>other acts or events not the
product of the removing defendant's activity</u>."  <u>Id.</u> at 467
(emphasis added) (internal citations omitted).

[4] In <u>Kurt Orban</u>, the case was removable on its face, but rather
than remove it, the defendant filed a motion in state court
arguing that the dispute could only be heard in the federal
district courts of the United States.  301 F. Supp. at 699.
Only after the state court denied the motion did the defendant
petition the court for removal arguing that the pendency of the
motions in the Circuit Court "tolled" the removability of the
case.  <u>Id.</u>  The Court pointed out that the filing of the motion
to dismiss demonstrated that the defendant knew that the case
had been removable from the outset.  <u>Id.</u>  Moreover, the
complaint had not been "amended or changed in any particular by
anyone – plaintiff, defendants, or the State court judge" that
would create grounds for removal not previously present. <u>Id.</u> at
700.  The court discussed the "voluntary-involuntary rule and
quoted from <u>Potter</u> and indicated that the defendant's act of
filing a motion to dismiss could not result in an extension of
the deadline for filing a removal petition.  <u>Id.</u>  But its ruling
turned principally on the fact that the pleading had provided
grounds for removal on its face and nothing that any party
involved with the case had done had changed it in a way that
would result in an extension of the filing deadline.  <u>Id.</u>

Plaintiffs, it would result in a situation whereby the removal period for the non-Cianbro defendants had not yet begun – despite the fact that there is clear evidence that they know about the grounds for removal.  The question is simply when they learned about the grounds of removal.  This Court does not believe that limiting the interpretation of "other paper" only to those situations where it is the result of the voluntary acts of the plaintiff is a correct interpretation of § 1446(b) nor does the jurisprudence support such a restrictive interpretation.

Thus, while the notice of removal period may not be extended for Defendant Cianbro Corporation on the basis of its affidavit, it is extended as to the other Defendants who did not share Cianbro Corporation's knowledge as to its principal place of business at the time that they received the Complaint.  While it is conceivable that Cianbro Corporation verbally shared its knowledge of its principal place of business before the other Defendants received the Stone Affidavit, the Fourth Court in Lovern held that it is not necessary to "inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when." 121 F.3d at 162.  Rather, the courts can "rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the

19

grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." Id. Thus, the thirty-day removal period for the non-Cianbro Defendants began when they first received the Stone Affidavit.

Here the original pleading mistakenly stated that Cianbro Corporation's principal place of business was Maryland indicating to all Defendants other than Cianbro Corporation and possibly its subsidiaries that there was no diversity of citizenship. The Nucor Defendants had their first written notice of Cianbro Corporation's residency on April 17, 2009, when it received the Stone Affidavit from Cianbro's counsel. Defendants SSOE Systems, Inc. SSOE, Inc.; Warren Environment, Inc.; and ECSA had their first written notice of Cianbro Corporation's principal place of business on April 23, 2009 when they received notice of the filing of the Notice of Removal. Thus, all of these parties either joined in the Notice of Removal or expressed unambiguous consent to the notice of removal within 30 days of their first written notice of Cianbro Corporation's principal place of business creating grounds for removal.

Whether this holding applies equally to the Cianbro subsidiary Defendants is an open question. Whether Cianbro Corporation's knowledge could be attributed to the subsidiaries

on the basis of their relationship, particularly where they were represented by the same counsel is not one addressed by the parties nor is it necessary to the outcome of this motion for remand as this Court holds that the Cianbro subsidiary Defendants properly provided consent in the original Notice of Removal.

Plaintiffs argue that because the initial Notice of Removal named only Nucor Corporation and Cianbro Corporation that it did not include their affiliated companies.  Defendants argue that the Cianbro subsidiaries were included in the initial Notice of Removal by virtue of the statement "[a]ll other Defendants in this action fully consent to Removal of this action . . . ," Notice of Removal at ¶9, and the fact that the Notice of Removal was signed by counsel shared by all of the Cianbro defendants. In response, Plaintiffs cite to Anne Arundel for the proposition that one party may not give its consent through another party's attorney.  905 F. Supp. at 278-79.  Instead, Plaintiffs argue Anne Arundel establishes that each Defendant was required to individually file something written within the applicable timeframe.  Id.

What Plaintiffs fail to note, however, is that the Court in Anne Arundel does not say that an attorney for multiple parties cannot give consent for all of the parties that it represents. So, while under Anne Arundel, Cianbro Corporation's attorney

21

cannot consent on behalf of Warren Environment and other non-Cianbro Defendants, left open is the question whether Cianbro Corporation's attorney, which represents the Cianbro subsidiary Defendants as well, can give their consent without specifically naming each of them.  This Court holds that it can.

Ruling in a similar situation, this Court in McCauley v. Doe held that the unnamed defendants in a notice of removal provided sufficient evidence of their intent to join the removal petition where the named and unnamed defendants were represented by the same counsel and additional filings made on the same date or thereafter made it clear that the defendants consented to and joined in the removal.  2002 WL 32325676, at *3 (D. Md. 2002).  In McCauley, the Notice of Removal only referenced one defendant, A.R. Caho, but all of the defendants were represented by the same counsel.  The additional documents filed demonstrating the defendants consent included 1) the Civil Cover sheet listing all of the defendants filed on the same date as the notice of removal; 2) the motion to dismiss also filed on the same date as the notice of removal containing the names of all of the defendants; 3) the removing parties' response to standing order concerning removal filed after the notice was filed by all of the defendants and paragraph 5 of that response stating that "[a]ll of the Defendants, by their filing a

responsive pleading in this Court [the motion to dismiss], have
formally joined in the action's removal." Id.

This Court's decision in McCauley is consistent with that
of other jurisdictions that have also ruled on this issue. See
e.g., Cook v. Randolph County, 573 F.3d 1143, 1150-51 (11th Cir.
2009) (holding that a statement in the notice of removal that
all defendants consented to removal was sufficient to create
unanimous consent where the notice was signed by the defendants
shared counsel because the attorney was authorized to represent
the defendants' position to the court such that her signature
bound them to the representation of consent; requiring further
formality would "add pointless burden," particularly where no
one was alleging that any of the defendants did not want the
case removed); Lewis v. City of Fresno, 627 F. Supp. 2d 1179,
1185-86 (E.D. Cal. 2008) ("This court has previously determined
that where the pleadings demonstrated defendants were all
represented by the same counsel, the failure of one defendant to
formally join the removal does not negate its validity.");
Mitchell v. Paws Up Ranch, LLC, 597 F.Supp.2d 1132, 1141-42 (D.
Mont. 2009) (holding that a defendant's filing of an answer
through the removing defendants' counsel unambiguously
manifested consent to removal); Roybal v. City of Albuquerque
No. CIV 08-181, 2008 WL 5991063, at *8 (D.N.M. Sept. 24, 2008
(unpublished) (noting that concerns surrounding the

23

representations of consent for other parties "is all but
eliminated when [counsel makes a written representation] on
behalf of his or her clients, rather than on behalf of parties
who are represented by different attorneys"); Esposito v. Home
Depot, 436 F. Supp. 2d 343, 346-47 (D.R.I. 2006) (holding that
although defendant Home Depot did not formally join defendants
Black & Decker and Dewalt's removal petition or at least
explicitly state its consent to removal in its answer, the
plaintiff was put on notice, within the thirty-day period, of
Home Depot's consent to removal when it filed its answer in the
federal district court and notified the court that it was
represented by the same attorney as the other defendants).

Through the filing of the Answer in the state court, the
Cianbro Defendants put Plaintiffs on notice that they were
represented by the same counsel.  In the Notice of Removal,
counsel for the Cianbro Defendants, who was authorized to act
upon their behalf, represented that "[a]ll other Defendants in
this action fully consent to Removal of this action . . . ."
Notice of Removal ¶ 9.  Contemporaneously filed with the Notice
of Removal on April 22, 2009, counsel filed on behalf of all
Cianbro Defendants the Disclosure Statement pursuant to Fed. R.
Civ. P. 7.1 and L.R. 103.3 again putting the plaintiff on notice
that the Cianbro Defendants were represented by the same
counsel.  On May 7, 2009, the Cianbro Defendants reaafirmed

their consent to removal through the same counsel in the filing

of the Joint Response to Standing Order Concerning Removal.

These documents and representations were sufficient to evidence

Cianbro Equipment, LLC, and Cianbro Fabrication and Coating

Corporation's intent to join in the removal petition of April

22, 2009.

Therefore, the Defendants have sufficiently established

diversity jurisdiction and shown unanimous consent in removal in

a timely manner.  For these reasons the motion to remand will be

denied.

## III. MOTION TO DISMISS OR IN THE ALTERNATIVE FOR A MORE DEFINITE STATEMENT

### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint

must contain sufficient factual matter, . . . , to 'state a

claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial

plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Iqbal, 129 S.

Ct. at 1949 (citing Twombly, 550 U.S. at 556).  "Detailed

factual allegations" are not required, but allegations must be

more than "labels and conclusions," or "a formulaic recitation

of the elements of a cause of action[.]" <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555). "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Twombly</u>, 550 U.S. at 563.  In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  <u>Ibarra v. United States</u>, 120 F.3d 472, 474 (4th Cir. 1997) (citing <u>Little v. Federal Bureau of Investigation</u>, 1F.3d 255, 256 (4th Cir. 1993).

Unlike a Rule 12(b)(6) motion, which alleges that a complaint fails to state a sufficient claim to relief, a Rule 12(e) motion "allows a defendant to move for a more definite statement if the complaint 'is so vague or ambiguous that [he] cannot reasonably be required to frame a responsive pleading.'" <u>Hodgson v. Virginia Baptist Hospital, Inc.</u> 482 F.2d 821, 822-23 (4th Cir. 1995).  Thus, "[w]here a party has enough information to frame an adequate answer, a court should deny the Rule 12(e) motion and avoid delay in maturing the case." <u>Doe v. Bayer Corp.</u>, 367 F. Supp. 2d 904, 917 (M.D.N.C. 2005) (citing <u>Hodgson</u>, 482 F.2d at 822).

**B.   Discussion**

Nucor Defendants co-mingle their Rule 12(b)(6) arguments
with their Rule 12(e) arguments extensively.  Whereas Rule
12(b)(6) tests whether the allegations support a claim, Rule
12(e) tests whether a responsive pleading can be drafted.  Here,
Plaintiffs have provided adequate facts to ascertain that a
plausible claim exists.  Moreover, there is sufficient
information for Nucor Defendants to frame an adequate answer.

Here, Plaintiffs have alleged that on March 14, 2006, a 64-
foot-long portion of the calciner exhaust start-up stack
attached to the FCC Plant at W.R. Grace in Curtis Bay, Maryland,
broke loose and fell on a maintenance truck in which Jimmy Wayne
Streeter was sitting, crushing him to death.  Compl. at ¶21-22.
Plaintiffs further allege that the Nucor Defendants designed,
developed, fabricated, manufactured, modified, and installed the
calciner stack and its constituent parts.  Complaint at ¶25.
Plaintiffs also allege that as the Defendants did these acts
improperly, the calciner stack became detached from the FCC
Plant, causing it to fall.  Compl. at § 26.  Nucor Defendants
should not have any problem admitting or denying these
allegations.  Thus, it cannot be said that they are vague or
conclusory.

Nucor Defendants' only allegation that the elements of the
various claims raised by Plaintiffs have not been met is that
the Complaint did not establish that Nucor Defendants had a duty

27

to Plaintiffs.  As companies that designed, developed,
fabricated, manufactured, modified, and installed the calciner
stack that fell from the W.R. Grace plant, however, Defendants
had a duty to produce a non-defective calciner stack and to
avoid creating a calciner stack that would fall off the roof and
harm someone.  See American Laundry Machinery Industries, Inc.
v. Horan, 412 A.2d 407, 411 (Md. Ct. Sp. App. 1980) (discussing
that suits have been allowed against manufacturers for defective
design and negligent production because manufacturers have a
duty to produce a safe product just as each person has a duty to
avoid unreasonable risk of harm to others).

Finally, Nucor alleges that it cannot ascertain whether it
has any affirmative defenses based on statutes of limitations or
repose because Plaintiffs failed to provide a timeline of the
events.  Plaintiffs provided the date upon which the death
occurred, and, as a wrongful death action, the date upon which
the cause of action arose, March 14, 2006, that is sufficient.

As it appears that the Nucor Defendants' demands for
further information would be more appropriately addressed during
discovery, Nucor Defendants' Motion to Dismiss or in the
Alternative for More Definite Statement will be denied.

**IV.  Conclusion**

For the foregoing reasons, the Plaintiffs' Motion for
Remand will be denied, the Defendants' Motion to Amend will be

granted, the Defendant ECSA's Motion to Quash will be denied as
moot, and the Nucor Defendants' Motion to Dismiss or in the
Alternative for a More Definite Statement will be denied.  A
separate order will issue.

<u>   9/29/09   </u>                    _____/s/_____
                                       William M. Nickerson
                                       Senior United States District Judge