# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DEBORAH STREETER et al.         *
                                *
        v.                      *  Civil Action WMN-09-01022
                                *
SSOE SYSTEMS, INC. et al.       *

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Pending before the Court is a motion for summary judgment filed by Defendants Nucor Corporation; Nucor Environmental Services, Inc.; Nucor Properties, LLC; Nucor Building Systems Sales Corporation; and Nucor-Yamato Steel Sales Corporation (Nucor Defendants).[1] ECF No. 82. The motion is effectively unopposed but ripe for review. Upon consideration of the pleadings, facts and applicable law, the Court determines that the Nucor Defendants' Motion for Summary Judgment will be granted for the reasons set forth below.

**I.   INTRODUCTION**

This action stems from the death of Jimmy Wayne Streeter on March 14, 2006. Mr. Streeter died when the maintenance truck in which he was sitting was struck by a sixty-four-foot-long portion of a chimney stack that broke off the roof of the W.R.

---

[1] Also pending are the following two motions, both of which will be denied as moot: Non-Nucor Defendants' Joint Motion for Certification of Final Judgment, ECF No. 79; and Plaintiffs' Motion to Stay Action as to the Nucor Defendants Pending Appeal, ECF No. 80.

Grace chemical manufacturing plant in Curtis Bay, Maryland. Plaintiffs, Mr. Streeter's widow and son, allege that the Nucor Defendants manufactured defective bolts that were subsequently used to install the stack, and that the defective bolts were at least in part responsible for the structural failure of the stack. The Nucor Defendants deny this allegation.

W.R. Grace manufactures certain industrial chemicals at a facility it owns in Curtis Bay, Maryland. In 1995, W.R. Grace built a new plant (Plant) at Curtis Bay to expand its chemical production capacity. The Plant included a "calciner start-up stack" (Stack), which in essence was a chimney stack through which hot gas escaped the Plant during the manufacturing process. The Stack was integrated into the new Plant and passed through the roof of the Plant's building. Above the roof, the Stack was constructed of four sections joined by three flanges. The flanges were bolted together with several one-half inch bolts. In 2006, the Stack collapsed at or near the Stack's center flange, fell off the roof, and crushed the truck in which Mr. Streeter was sitting.

Plaintiffs' Complaint joined several defendants and alleged several causes of action, including: negligent design; negligent manufacture; negligent modification and installation; strict liability—defect in design; strict liability—defect in manufacture; strict liability—defect in modification and

2

installation; and wrongful death. The vast majority of the design, construction and installation of the Stack was completed by the Non-Nucor Defendants.[2] The Nucor Defendants' only connection to this case is that they are alleged to have manufactured defective bolts used to install the Stack.

Upon the completion of discovery, the Nucor Defendants filed the instant motion for summary judgment. In turn, Plaintiffs filed a document entitled "Response in Opposition to the Nucor Defendants' Motion for Summary Judgment." That document, however, contained almost no opposition. Instead, Plaintiffs requested that the Court reopen discovery so Plaintiffs' experts could perform additional testing on the bolts that Plaintiffs allege the Nucor Defendants defectively manufactured. Plaintiffs' response closed by noting that "[p]ending the outcome of the testing, Plaintiffs will not oppose the non-Nucor [sic Nucor] Defendants' Joint Motion for Summary Judgment." Pls.' Opp'n ¶ 9, ECF No. 83. The Nucor Defendants consequently filed a reply memorandum responding to

---

[2] The "Non-Nucor Defendants" included: SSOE Systems, Inc.; SSOE, Inc.; Cianbro Corporation; Cianbro Equipment, LLC; Cianbro Fabrication and Coating Corporation; Warrant Environment, Inc.; and Engineered Crane Systems of America. On April 26, 2010, the Non-Nucor Defendants filed a motion for summary judgment in which the Nucor Defendants did not join. On August 8, 2010, this Court granted that motion in favor of the Non-Nucor Defendants, finding that Maryland's statute of repose barred Plaintiffs' suit against them.

Plaintiffs' request to reopen discovery and further expounding upon their motion for summary judgment.

## II. Legal Standard

Summary judgment is proper if the evidence before the court, consisting of the pleadings, depositions, answers to interrogatories, and admissions of record, establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying the portions of the opposing party's case which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. The non-moving party is entitled to have "all reasonable inferences . . . drawn in its respective favor." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1129 (4th Cir. 1987).

If the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law, the non-moving party must, in order to withstand the motion for summary judgment, produce sufficient evidence in the form of depositions, affidavits, or other documentation which demonstrates that a triable issue of fact exists for trial. Celotex, 477 U.S. at 324. Unsupported

speculation is insufficient to defeat a motion for summary judgment. Felty, 818 F.2d at 1128 (citing Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986)). Furthermore, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Thus, only disputes over those facts that might affect the outcome of the case under the governing law are considered to be "material." Id.

## III. DISCUSSION

Maryland law requires that a plaintiff in a products liability case prove: (1) that a defect in the product existed when the product was sold; (2) that the defect was attributable to the seller; and (3) that there is a causal relationship between the defect and the injury. Mohammad v. Toyota Motor Sales, U.S.A., Inc., 947 A.2d 598, 605 (Md. 2008). The elements required to prove negligence differ somewhat from those required under strict liability, but while "negligence . . . and strict liability are distinct, . . . they [both] require proof that the product was defective when it left the hands of the manufacturer, and that the defective condition was a predicate cause of the injuries or damages of which the plaintiff complains." Id. Generally, Plaintiffs must present expert testimony "when the subject of the inference that a product is

5

defective is particularly related to some science or profession that . . . is beyond the ken of the average layman." Id. at 607 (citing Jones v. Reichert Jung, Inc., 211 F. Supp. 2d 661, 667 (D. Md. 2002)).

In this case, Plaintiffs have presented little evidence that the bolts were actually manufactured by the Nucor Defendants, and they have presented no evidence that the bolts were in any way defective. Plaintiffs do not dispute this. Instead, Plaintiffs explain that they have not yet completed discovery as it relates to the Nucor Defendants, because "the focus of discovery has [thus far] been limited to the question of whether the statute of repose precluded suit by the Plaintiffs against the Non-Nucor Defendants." Pls.' Opp'n 1, ECF No. 83. As such, Plaintiffs request more time so that their expert, Neville W. Sachs, can test the bolts from the flange that actually failed. Previously, Mr. Sachs only tested bolts from the other flanges on the Stack.

It is true that earlier litigation in this case was focused more intensely on the liability of the Non-Nucor Defendants. For example, the Non-Nucor Defendants filed their summary judgment motion in April 2010, well before the Nucor Defendants did the same. This focus, however, was not the result of any Court Order or other decision by the Court. Moreover, Plaintiffs had ample time to complete discovery related to the

Nucor Defendants notwithstanding the earlier focus. As evidence, the parties jointly filed a motion on June 14, 2010, to extend the discovery deadline by four months. ECF No. 69. That motion, filed eleven days after Plaintiffs filed their opposition to the Non-Nucor Defendants' motion for summary judgment, explained that the completed depositions up to that point had focused primarily on the statute of repose, and thus the parties needed additional time to complete more depositions and review more documents, presumably on issues other than the statute of repose. Consequently, the Court extended the discovery deadline four months, from June 18, 2010, to October 18, 2010.

The additional four months of discovery should have given Plaintiffs, who had finished briefing the statute of repose question and were free to focus on the Nucor Defendants, ample time to test the bolts at issue. If the four months were insufficient, Plaintiffs could have moved for another extension of time, but they did not. Furthermore, Plaintiffs first retained Mr. Sachs to examine and test the bolts in 2006. At that time, Mr. Sachs tested several bolts from the top flange but refrained from testing the bolts from the flange that failed. Plaintiffs therefore had at least four years to perform the tests they now claim to require, yet they provide no explanation excusing the delay.

Although Plaintiffs never tested the bolts that failed when the Stack collapsed, both parties have submitted to this Court evidence weighing directly on the liability of the Nucor Defendants and whether the bolts in question were defectively designed or manufactured. As a threshold question, however, Plaintiffs must present evidence indicating that the Nucor Defendants manufactured the bolts used in the Stack, because the Nucor Defendants deny doing so. The only evidence before the Court that the Nucor Defendants may have manufactured the bolts is the report of Plaintiffs' expert, Mr. Sachs, dated March 30, 2006. Pls.' Opp'n, Ex. I, ECF No. 83-1. Mr. Sachs completed a thorough review of the collapsed Stack and its constituent parts, including many of the bolts recovered from all three flanges of the Stack. Of the bolts examined from the top flange, which were the same type of bolts used in all the flanges, Mr. Sachs observed that "[t]he [bolts'] head marking indicates the bolts were made by Nucor Fastener, St. Joe, Indiana." Pls.' Opp'n, Ex. I at 4, ECF No. 83-1.

None of the Defendants in this action is named Nucor Fastener, although Nucor Corporation is listed on the Complaint caption as doing business as "Nucor Fastener Sales Corporation." Compl. 3, ECF No. 2. Thus, the relationship of the Nucor Defendants to the manufacturer of the bolts, if any at all, remains unclear. The Nucor Defendants, including Nucor

Corporation, collectively deny any connection to the bolts at issue and, in fact, they deny being in the business of manufacturing bolts at all. In the Nucor Defendants' responses to Plaintiffs' interrogatories, they declare that "none of these [Nucor] Defendants manufactures or supplies bolts, or has done so in the . . . relevant time frame." Mot. Summ. J., Ex. 11 at 10, ECF No. 82-13. In light of the Nucor Defendants' interrogatory responses, Mr. Sachs' observation about a company which may or may not be affiliated with the Nucor Defendants is insufficient to generate a genuine issue of material fact.

Even if the Nucor Defendants had manufactured the bolts, Plaintiffs' effort to hold the Nucor Defendants liable would fail. The reports of Plaintiffs' own experts, including both Mr. Sachs and Charles R. Norman, indicate that the Stack's collapse was most likely a function of events and conditions wholly unrelated to the quality of the bolts. For example, Mr. Sachs' 2006 bolt analysis report implicates the Stack's designers and installers but not the bolts' manufacturer. Pls.' Opp'n, Ex. I at 4, ECF No. 83-1. To reach his conclusions, Mr. Sachs relied upon, among other things: an accident site inspection; an examination of the bolts in the flange that failed; and an examination and tests of the bolts in the other two flanges of the Stack. Defs.' Reply, Ex. A at 1, ECF No. 86-1. After considering all the evidence, Mr. Sachs concludes that

"the fact that the bolts failed from fatigue without deformation indicates that they were not adequately tightened on installation." Pls.' Opp'n, Ex. I at 4, ECF No. 83-1. Here, Plaintiffs do not allege the Nucor Defendants installed the bolts.

Mr. Sachs also completed a second report in March 2010, in which he opines on seven different actions that caused or contributed to the Stack's collapse. Def.'s Reply, Ex. A at 1-2, ECF No. 86-1. The actions include, among other things: a failure to adequately tighten the bolts on installation; a failure to use bolts large enough to withstand the forces exerted on the Stack; a failure to adequately evaluate certain design changes that weakened the Stack; and a failure to otherwise properly install the bolts. Id. The parties responsible for these failures, according to Mr. Sachs, include "the designers who changed the location and the number of flanges, the person who reduced the bolt size, and the erectors" of the Stack. Id. at 6. Here, too, Mr. Sachs does not implicate the manufacturers of the bolts.

Similarly, Plaintiffs' second expert, Charles R. Norman, compiled another report entitled, "Causation Analysis of Start-up Stack Failure." Mot. Summ. J., Ex. 13, ECF No. 82-15. The report details Mr. Norman's analysis of the Stack's collapse and is based upon the Stack's original design, the Stack's ad hoc

design changes, and the bolt examinations completed by Mr. Sachs.  After identifying and opining on several failures of those involved in constructing the Stack, Mr. Norman concludes that "there is clear evidence that the design professional(s), general contractor, fabricator and installation contractor did not act in a reasonably prudent manner."  Id. at 7.  Mr. Norman's conclusions align with those of Mr. Sachs, and the Nucor Defendants are once again excluded from blame.

   Mitigating the reports' probative value, however, are various qualifications contained within all three reports that constrain the experts' conclusions.  Both Mr. Sachs' 2006 bolt analysis and Mr. Norman's 2010 causation analysis are listed as "preliminary reports."  The last paragraph of Mr. Sachs' 2010 report acknowledges that he did not examine "the lack of flange flatness from installation and from field modifications," though Mr. Sachs does not indicate that any additional considerations would substantially change his conclusions.  And, of course, the thrust of Plaintiffs' primary objection to the Nucor Defendants' summary judgment motion is that Mr. Sachs never tested for defect the bolts that actually failed.  But Mr. Sachs did, however, test identical bolts from the top flange, and he found those bolts had an average hardness well within the expected

engineering standards.[3]  Such evidence indicates strongly the bolts were manufactured without defect, and it therefore strains credulity to suggest the bolts from the failed flange would be any different.

Having already retained two experts who subsequently assigned blame for the Stack's collapse to defendants other than the Nucor Defendants, and having made a strategic decision to pursue discovery against those other Non-Nucor Defendants despite having ample time to investigate the role of all defendants, Plaintiffs lack justification to reopen discovery. Moreover, in light of the interrogatories and experts' reports before this Court, Plaintiffs have failed to demonstrate a genuine dispute of material fact regarding any potential liability of the Nucor Defendants.  Accordingly, the Nucor Defendants are entitled to summary judgment on all counts.

## V.   CONCLUSION

For the foregoing reasons, the Nucor Defendants' Motion for Summary Judgment, ECF No. 82, will be granted.  The Court will issue a separate order.

```
              _____/s/_____
              William M. Nickerson
```

---

[3] According to Mr. Sachs' 2006 bolt analysis, "[t]he average bolt hardness [of the bolts in the top flange] was HRc 26.7.  (ASTM A 325 states that the hardness range is HRc 24 to 35.)"  Pls.' Opp'n, Ex. I at 4, ECF No. 83-1.

Senior United States District Judge

January 14, 2011